**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| KAREN BORN, | : | CIVIL ACTION NO. 07-3771 (MLC) |
| Plaintiff, | : | **MEMORANDUM OPINION** |
| v. | : | |
| MONMOUTH COUNTY CORRECTIONAL INSTITUTION, et al., | : | |
| Defendants. | : | |

**COOPER, District Judge**

Plaintiff, Karen Born, alleges claims pursuant to 42 U.S.C. § ("Section") 1983 against defendants, Officer Pizzano ("Pizzano"), Sergeant Cornine ("Cornine"), and Officer Simone ("Simone") (collectively, "defendants"). (Dkt. entry no. 1, Compl.)  Cornine now moves for summary judgment in his favor pursuant to Federal Rule of Civil Procedure ("Rule") 56(c). (Dkt. entry no. 21.)  Simone separately moves for summary judgment in her favor pursuant to Rule 56(c). (Dkt. entry no. 22.)  Pizzano also separately moves for summary judgment in his favor pursuant to Rule 56(c). (Dkt. entry no. 23.)  Plaintiff opposes the separate motions. (Dkt. entry nos. 24, 25, & 33.) The Court determines the separate motions on briefs without an oral hearing, pursuant to Rule 78(b).  For the reasons stated herein, the Court will (1) deny Corzine's motion, (2) deny

Pizzano's separate motion, and (3) grant Simone's separate motion.

**BACKGROUND**

Plaintiff's Section 1983 claims arise out of alleged conduct that occurred while she was incarcerated at Monmouth County Correctional Institution ("MCCI").  (See Compl.)[1]  Plaintiff alleges that when Cornine brought her to the "Constant Watch" in the Medical Department of MCCI, Pizzano told her to lay down and then "stomped" on her back, "damag[ing] [her] ribs severely", so that she could not "move or breath[e] or cough without extreme pain for [three] weeks".  (Id.)  She further alleges that Cornine "stood by and watched [and] allowed [Pizzano] to stomp on [her] back with his boot, and did nothing to stop the assault".  (Id.)  She also alleges that when she complained to Pizzano about the assault a few days later, Pizzano "quickly closed" the "trap" in her door, "causing a cup of hot soup to spill on [her] bare feet".  (Id.)  She states that Pizzano "did this intentionally".  (Id.)  Plaintiff further alleges that Simone told her to give her glasses to Simone, or "she would rip them off my face".  (Id.)  Simone then "took [her] glasses from [her]" and did not return them to her.  (Id.)

---

[1] Plaintiff is no longer incarcerated.  (Dkt. entry no. 22, Simone Br., at 5.)

Cornine now moves for summary judgment in his favor, arguing that (1) plaintiff did not exhaust her administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), and (2) there is no evidence to suggest that Cornine was (a) present when the alleged assault occurred, or (b) involved in the incident that led to plaintiff's glasses not being returned to her.  (Dkt. entry no. 21, Cornine Br., at 6-9.) Plaintiff opposes the motion.  (Dkt. entry no. 24, Pl. Opp. Br. to Cornine's Mot.)

Simone separately moves for summary judgment, arguing that there is no genuine issue of material fact that Simone's conduct did not amount to (1) deliberate indifference to serious medical needs, or (2) excessive force under the Eighth Amendment. (Simone Br., at 14-20.)  Plaintiff opposes Simone's separate motion.  (Dkt. entry no. 25, Pl. Opp. Br. to Simone's Mot.)

Pizzano also separately moves for summary judgment, arguing that plaintiff (1) did not exhaust her administrative remedies pursuant to the PLRA, and (2) does not present sufficient evidence supporting her allegation that Pizzano assaulted her. (Dkt. entry no. 23, Pizzano Br., at 7-9.)  Plaintiff opposes Pizzano's separate motion.  (Dkt. entry no. 33, Pl. Opp. Br. to Pizzano's Mot.)

**DISCUSSION**

**I.    Summary Judgment Standard**

Rule 56(c) provides that summary judgment is proper if the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Id.  The summary judgment movant bears the initial burden of showing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant must set out specific facts showing that there is a genuine issue for trial.  Fed.R.Civ.P. 56(e)(2).  A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule

56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law.  Id. at 248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

## II.  Prison Litigation Reform Act

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).[2]

---

[2] Failure to exhaust administrative remedies is an affirmative defense under the PLRA.  Jones v. Bock, 127 S.Ct. 910, 921 (2007).  Defendants "have the burden of pleading and proving the defense in a motion for summary judgment or at trial."  Kounelis v. Sherrer, No. 04-4714, 2005 WL 2175442, at *6 (D.N.J. Sept. 6, 2005).  Cornine and Pizzano have properly raised the affirmative defense by asserting it in their motion for summary judgment.  (Dkt. entry nos. 21 & 23.)

The exhaustion of all administrative remedies is mandatory, even if (1) the prisoner believes they are ineffective, or (2) the available administrative process cannot grant the desired remedy. Booth v. Churner, 532 U.S. 731, 739-41 (2001); see Porter v. Nussle, 534 U.S. 516, 524 (2002) (explaining that (1) "exhaustion in cases covered by [section] 1997e(a) is . . . mandatory", (2) "[a]ll 'available' remedies must . . . be exhausted", and (3) the remedies need "not meet federal standards, nor must they be 'plain, speedy, and effective.'"). Therefore, to comply with the PLRA, a prisoner must properly exhaust administrative remedies as a precondition to bringing a federal claim in federal court, or risk procedural default. Warren v. Pennsylvania, No. 07-3011, 2008 WL 3318994, at *3 (3d Cir. Aug. 12, 2008); Bailey-El v. Fed. Bur. of Prisons, 246 Fed.Appx. 105, 107 (3d Cir. 2007); Jackson v. Ivers, 244 Fed.Appx. 508, 512 (3d Cir. 2007).

The PLRA's exhaustion requirement applies to all actions brought by inmates "about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532. The Court, in determining whether a prisoner has properly exhausted administrative remedies, must evaluate the prisoner's compliance with the prison's administrative regulations governing inmate grievances, and the waiver, if any, of such regulations by prison officials. Jackson, 244 Fed.Appx. at 512; Spruill v.

6

<u>Gillis</u>, 372 F.3d 218, 222 (3d Cir. 2004).[3]  "[C]ompliance with
the administrative remedy scheme will be satisfactory if it is
substantial."  <u>Nyhuis v. Reno</u>, 204 F.3d 65, 77-78 (3d Cir. 2000).

    The PLRA exhaustion requirement contemplates that the
prisoner must bring a grievance to the attention of the
appropriate prison official so that the official has an
opportunity to respond to the grievance before the prisoner
resorts to the courts.  <u>Spruill</u>, 372 F.3d at 227; <u>see</u> <u>Porter</u>, 534
U.S. at 524-25 (indicating PLRA "afford[s] corrections officials
time and opportunity to address complaints internally before
allowing the initiation of a federal case.").  Moreover, after
filing an initial complaint, the prisoner must carry the
grievance through any available appeals process.  <u>Nyhuis</u>, 204
F.3d at 67.  Thus, a prisoner has not exhausted administrative
remedies until the prisoner has pursued a grievance through each
level of appeal available within the prison system.  <u>Spruill</u>, 372
F.3d at 232.

    A failure to exhaust administrative remedies, however, may
be excused in some circumstances.  <u>Ramos v. Smith</u>, No. 04-249,
2005 WL 3054291, at *5-*6 (E.D. Pa. Nov. 14, 2005).  For example,
a failure to exhaust administrative remedies may be excused if

_____

    [3] The PLRA's exhaustion requirement applies to grievance
procedures set forth in a New Jersey Department of Corrections
("NJDOC") inmate handbook, even if that handbook is not formally
adopted by a state administrative agency.  <u>Concepcion v. Morton</u>,
306 F.3d 1347, 1355 (3d Cir. 2002).

"prison officials precluded [the prisoner] from filing administrative requests or appeals so that [the] [d]efendant is estopped from raising exhaustion as an affirmative defense."  See id. at *6.  Also, if "the procedures were unclear," that may create "special circumstances that justify excusing the exhaustion requirement."  See id.; see, e.g., Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (reversing dismissal of complaint for failure to exhaust administrative remedies because district court did not consider plaintiff's allegation that prison officials denied him grievance forms); Brown v. Croak, 312 F.3d 109, 112-13 (3d Cir. 2002) (vacating order dismissing claims for failure to exhaust administrative remedies, as plaintiff put forth evidence that prison officials gave him "erroneous" or "misleading" instructions as to grievance procedure, thus creating a factual issue as to whether administrative remedies were made "available" to plaintiff); Camp v. Brennan, 219 F.3d 279, 280-81 (3d Cir. 2000) (reversing judgment in favor of defendants for plaintiff's failure to exhaust his administrative remedies, as plaintiff put forth evidence that prison officials misled him as to grievance procedure).

MCCI's grievance procedure is set out in the MCCI Inmate Manual, and is as follows.  (See Cornine Br., Ex. C, MCCI Inmate Manual.)  A prisoner must first inform an "Officer" of the grievance.  (Id.)  If the Officer is unable to resolve the

grievance, the grievance "shall be referred to the next appropriate supervisor for resolution". (Id.)  "Upon receipt [of] the grievance the supervisor shall attempt to settle the grievance and give written response to the inmate regarding the decision made, or the inability to make a decision at the supervisory level". (Id.)

If the supervisor cannot resolve the grievance, the supervisor "shall refer the grievance to the next level or Department Head". (Id.)  Then, the "Patrol Lieutenant shall make a decision within [twenty-four] hours.  The written response to the [prisoner] shall state the decision made and the reason for the decision". (Id.)  If the Patrol Lieutenant cannot resolve the grievance, the grievance "shall be referred to the Watch Commander.  The Watch Commanders shall make a decision within [twenty-four] hours and submit that decision and the reasons for it to the [prisoner]". (Id.)

If the prisoner is not satisfied with the Watch Commander's decision, the prisoner may appeal that decision. (Id.)  To do so, the prisoner must submit a "written request" to the "Deputy Warden". (Id.)  The Deputy Warden "shall review the grievance procedure", and then "respond in writing within [five] working days." (Id.)

Both Cornine and Pizzano argue that plaintiff failed to exhaust her administrative remedies because she did not utilize

MCCI's grievance procedure.  (Cornine Br., at 8-9; Pizzano Br.,
at 8-9.)  Cornine also submits a document that plaintiff signed,
entitled "Classification Questionnaire", acknowledging that she
received the MCCI Inmate Manual upon entering MCCI.  (Cornine
Br., Ex. D, 3-2-07 Classification Questionnaire.)  Plaintiff
disputes this fact and states that she did not receive the MCCI
Inmate Manual upon entering MCCI.  (Pl. Opp. Br. to Pizzano Mot.,
at 4.)

Cornine and Pizzano are not entitled to summary judgment
because of plaintiff's failure to exhaust her administrative
remedies.  It does appear that plaintiff did not utilize MCCI's
grievance procedure here.  However, plaintiff states that she
"was told by one female officer . . . that the proper procedure
if [a prisoner] wanted to file a grievance against an officer was
to write directly to Internal Affairs".  (Id.)  Thus, plaintiff
states that she "wrote grievances to Internal Affairs and to the
Warden" about the alleged assault and her missing glasses.  (Id.)
When she received no response, plaintiff then wrote to the
"ombudsman" and the Governor of New Jersey, Jon S. Corzine.
(Id.)  Thus, plaintiff has put forward evidence that she may have
been misled or given erroneous instructions with regard to MCCI's
grievance procedure, creating a genuine issue of material fact as
to whether plaintiff's failure to follow MCCI's grievance
procedure may be excused.  See Brown, 312 F.3d at 112-13.

10

**III.  Section 1983 Claims**

A plaintiff asserting civil rights violations under Section 1983 must establish that the defendant acted under color of state law to deprive him or her of a right secured by the Constitution or the laws of the United States.  Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does not create substantive rights, but instead provides a remedy for the violation of rights created by other federal laws.  Id.; Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

For a plaintiff's Section 1983 claim to survive a motion for summary judgment, there must be a genuine issue of fact as to whether the defendant (1) acted under color of state law; or (2) deprived the plaintiff of a federal right.  Groman, 47 F.3d at 633.  "The color of state law element is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law."  Id. at 638.  Further, officials may be liable under Section 1983 for the acts of those over whom they have supervisory responsibility.  However, civil rights liability cannot be predicated solely on the doctrine of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Personal involvement in the alleged wrong-doing must be shown.  Id.  There is no dispute here that Cornine, Pizzano, and Simone, a sergeant and officers employed by Monmouth County, acted under color of state law here.

## A.   Claims Asserted Against Cornine And Pizzano

It appears that plaintiff alleges an Eighth Amendment claim
of excessive force against Cornine and Pizzano.  (Compl.; Pl.
Opp. Br. to Cornine Mot., at 6; Pl. Opp. Br. to Pizzano Mot., at
7.)  In an excessive force claim under the Eighth Amendment, the
inquiry is whether force was applied in a good faith effort to
maintain or restore discipline, or maliciously and sadistically
to cause harm.  Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir.
2000).  Summary judgment in favor of a defendant is not
appropriate if it appears that the evidence, viewed in the light
most favorable to the plaintiff, will support a reliable
inference of wantonness in the infliction of pain.  Id.

Several factors may be considered in determining an
excessive force claim, including (1) the need for the application
of force, (2) the relationship between the need and the amount of
force that was used, (3) the extent of injury inflicted, (4) the
extent of the threat to the safety of staff and inmates, as
reasonably perceived by responsible officials on the basis of the
facts known to them, and (5) any efforts made to temper the
severity of a forceful response.  Id.  However, the analysis is
driven by the extent of the force and the circumstances in which
it was applied, and not by the resulting injuries.  Smith v.
Mensinger, 293 F.3d 641, 648 (3d Cir. 2002).

An officer's failure to intervene during another officer's use of excessive force can itself constitute excessive force. Id. at 650.  Such a failure can be the basis of liability for an Eighth Amendment violation if the officer had a realistic and reasonable opportunity to intervene and refused to do so.  Id. at 650-51.

Cornine argues that he is entitled to summary judgment here because there is no evidence (1) that Cornine had personal knowledge of the alleged assault, or (2) to suggest that Cornine was present during the alleged assault.  (Cornine Br., at 6-7.) However, plaintiff has put forth evidence indicating that Cornine was in the vicinity when she was allegedly assaulted, as she alleges that (1) Cornine escorted her to the "Constant Watch" cell in the Medical Department of MCCI, (2) it is MCCI policy "for the sergeant who escorts the [prisoner] to Constant Watch to stay there until the [prisoner] is securely locked into the Constant Watch cell", and (3) she saw Cornine outside the cell both before and after the alleged assault occurred.  (Pl. Opp. Br. to Cornine Mot., at 6-7.)  Thus, there is a genuine issue of material fact as to whether Cornine was present during the alleged assault, and, if so, what the extent of his participation was in it.  Therefore, Cornine is not entitled to summary judgment here.

Pizzano also argues that he is entitled to summary judgment here, as "the only evidence offered by [p]laintiff is her testimony that [Pizzano] was standing behind her when she entered constant watch, so it must have been [Pizzano] who 'stomped' on her back", and plaintiff "does not know who told her to lay down, as she was facing the wall and could not see behind her". (Pizzano Br., at 7.)  However, plaintiff also has put forth evidence that Pizzano was in the vicinity when the alleged assault occurred, as she alleges that she saw Pizzano in the vicinity of the cell both before and after the alleged assault. (Pl. Opp. Br. to Pizzano Mot., at 7-8.)  Thus, there is a genuine issue of material fact as to whether Pizzano was present during the alleged assault, and, if so, what the extent of his participation was in it.  Therefore, Pizzano also is not entitled to summary judgment here.[4]

### B.    Claims Asserted Against Simone

Plaintiff argues that Simone was deliberately indifferent to her medical needs in violation of the Eighth Amendment when Simone (1) told plaintiff to give Simone plaintiff's eyeglasses, "or she would rip them off [plaintiff's] face", and (2) "fail[ed] to tell the people in constant watch where [Simone] put plaintiff's glasses, thereby causing plaintiff to be nearly blind

---

[4] Pizzano does not address plaintiff's allegation that he assaulted her again by deliberately spilling hot soup on her feet.  (See Compl.; Pizzano Br.; dkt. entry no. 28, Pizzano Reply Br.)

when she left constant watch". (Pl. Opp. Br. to Simone Mot., at 2, 7-9.)

The Court notes that allegations of threats and verbal harassment cannot establish a Section 1983 claim. Banda v. Corzine, No. 07-4508, 2007 WL 3243917, at *10 (D.N.J. Nov. 10, 2007) (noting that verbal harassment, taunts, threats, or use of profanity alone is not actionable under Section 1983); Bieros v. Nicola, 860 F.Supp. 226, 233 (E.D. Pa. 1994) (noting that "[m]ere verbal harassment . . . does not rise to the level of a constitutional deprivation so as to qualify for a claim under [S]ection 1983, unless fulfillment of that threat was conditioned on plaintiff exercising some constitutionally protected right"). Thus, plaintiff's claim that Simone verbally threatened to remove her eyeglasses is insufficient to establish a Section 1983 claim. See Banda, 2007 WL 3243917, at *10.[5]

---

[5] Plaintiff also argues that Simone violated the Eighth Amendment when she forced plaintiff to undress in front of cameras, and "threatened to assault [plaintiff] unless [she] got naked in full view of the cameras watched by male officers". (Pl. Opp. Br. to Simone's Mot., at 7.) This allegation is not in the complaint. (See Compl.) Rather, plaintiff states that she made this allegation in her "amended [c]laim" against Simone. (Pl. Opp. Br. to Simone Mot., at 1.) This "amended claim" appears in plaintiff's "response" to Simone's answer, and apparently was sent to Simone's counsel in November 2007. (See dkt. entry no. 26, Pl. Certification, at ¶ 2, Ex. B, Response to Answer.) The Court notes that plaintiff would have been permitted to amend her complaint once as a matter of course before she was served with a responsive pleading. See Fed.R.Civ.P. 15(a)(1)(A). However, because Simone had already served her with a responsive pleading in October 2007, if plaintiff wished to amend the complaint, she was required to

Deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment, which is applicable to the states through the Fourteenth Amendment, because it constitutes "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  Helling v. McKinney, 509 U.S. 25, 32 (1993).  Accordingly, to succeed on an Eighth Amendment medical-care claim, an inmate must establish that (1) there is a serious medical need, and (2) prison officials were deliberately indifferent to this need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  A medical need is considered serious if it is one that either a physician would diagnose as requiring treatment or a lay person would easily recognize as needing medical attention.  Monmouth County Corr. Inst'l Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  Also, if denial or delay causes "unnecessary and wanton infliction of pain", a life-long handicap, or permanent loss, the medical need is considered serious.  Id.

"Where prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest.'"  Id. at 346 (internal citations omitted).  Deliberate indifference also is manifest

_____

obtain permission from the Magistrate Judge for leave to file an amended complaint to add this claim against Simone.  (See dkt. entry no. 8, Simone Ans.)  See Fed.R.Civ.P. 15(a)(2).

when prison officials "erect arbitrary and burdensome procedures

that result in interminable delays and outright denials of

medical care to suffering inmates."  Id. at 347 (internal

quotations and citations omitted).  However, claims of negligence

or malpractice are not sufficient to establish "deliberate

indifference".  Rouse, 182 F.3d at 197; see White v. Napoleon,

897 F.2d 103, 108 (3d Cir. 1990) ("Mere medical malpractice

cannot give rise to a violation of the Eighth Amendment.").

Thus, in order to state a cognizable claim for failure to provide

medical care in violation of the Eighth Amendment, a prisoner

must allege acts or omissions that are sufficiently harmful to

offend "evolving standards of decency".  Estelle v. Gamble, 429

U.S. 97, 106 (1976).

    Even assuming plaintiff had a serious medical need here,

Simone is entitled to summary judgment because there is no

evidence that she was deliberately indifferent to plaintiff's

medical needs.  Plaintiff's claim against Simone is one of

negligence.  (See Pl. Opp. Br. to Simone Mot., at 3 (stating that

"[i]t was [Simone's] responsibility to let the proper people know

in Medical constant watch where [she] put plaintiff's glasses so

they could be returned to plaintiff when she left constant watch

. . . Simone was negligent in this regard").)  Claims of

negligence are not sufficient to establish an Eighth Amendment

violation, as noted <u>supra</u>.  Thus, plaintiff's Eighth Amendment claim against Simone fails here.  <u>See</u> <u>Rouse</u>, 182 F.3d at 197.

**CONCLUSION**

For the reasons stated <u>supra</u>, the Court will grant (1) deny Cornine's motion for summary judgment, (2) deny Pizzano's separate motion for summary judgment, and (3) grant Simone's separate motion for summary judgment.  The Court will issue an appropriate order and judgment.


    s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:    August 28, 2008

18